**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01977-CMA-KMT

KRISTIANE K. ALLBRANDT, and
SHAWN W. ALLBRANDT

    Plaintiffs,

v.

BANK OF AMERICA, N.A.,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant Bank of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) & (g) and Fed. R. Civ. P. 12(b)(6) (Doc. # 17), filed on August 27, 2014. For the reasons discussed below, Defendant's motion is granted.

## I. BACKGROUND

**A.   FACTS**[1]

Plaintiffs Kristiane K. Allbrandt and Shawn W. Allbrandt formerly owned and resided in a home in Pierce, Colorado. Plaintiffs purchased their home in September of 1999 and refinanced with Hometown Mortgage in 2003. Sometime thereafter, the loan servicing was transferred to Countrywide, and then to Defendant. (Doc. # 16 at 1-2.)

---

[1] Unless otherwise noted, the following facts are allegations from Plaintiffs' Amended Complaint (Doc. # 16) and are deemed true for purposes of the instant motion.

In January 2010, Plaintiffs filed Chapter 7 Bankruptcy.  Between that time and December 2012, they continued to make mortgage payments for their home, but Defendant failed to credit the payments.  In February 2010, Defendant offered to "fix" the mortgage by doing a loan modification.  Defendant told Plaintiffs that it would accept payments only after the modification process was completed.  Between February 2010 and April 2013, Plaintiffs completed seven home loan modification applications.  From February 2010 to September 2013, there were more than 200 telephone calls, many of which were recorded by Ms. Allbrandt, in which Defendant misrepresented that it was processing the loan documents.  Defendant would also misrepresent that the application was incomplete or that it had misplaced or lost information.  During this time, Defendant also misled Plaintiffs about the status of the foreclosure of their home by saying that the home was not in foreclosure while moving ahead with the foreclosure.  (*Id.* at 2-3.)

Plaintiffs allege that they contacted the Office of the CEO and President, which Defendant "holds out" to customers as a way to reach persons with actual power to clear up problems, including loan modification issues.  However, the Office of the CEO and President "does not exist."  Instead, Defendant hires outside contractors to hold themselves out as the Office of the CEO and President and few, if any, of these offices have any actual contact with Defendant's CEO and President.  (*Id.* at 3-4.)

Following the foreclosure sale of Plaintiffs' home on June 5, 2013, Ms. Allbrandt recorded various phone calls with Defendant's employees in which they misinformed

2

her about the status of the foreclosure and Plaintiffs' requested loan modification. Ms. Allbrandt also attempted to contact the Office of the CEO and President to resolve problems related to the foreclosure and loan modification. (*Id.* at 4-8.)

In addition to allegations related to the foreclosure of their home, Plaintiffs allege facts from a separate lawsuit in the United States District of Massachusetts, in which former employees aver that Defendant "employed a common strategy of delaying [loan modification] applications" and told customers documents had not been received, when, in fact, they had. (*Id.* at 9.) One employee averred that Defendant encouraged its employees to maximize fees by "fostering and extending delay of the [loan modification] process by any means they could—this included lying to customers." (Doc. # 16 at 10.) Another employee stated that, based on her observations, Defendant "was trying to prevent as many homeowners as possible from obtaining permanent . . . loan modifications while leading the public and the government to believe that it was making efforts to comply with [the Department of Treasury's Making Home Affordable Modification Program ("HAMP")]. (*Id.* at 11.)

On August 13, 2014, Plaintiffs filed an Amended Complaint, alleging Defendant (1) engaged in fraudulent misrepresentation; (2) violated the Colorado Consumer Protection Act ("CCPA"); (3) violated the Real Estate Settlement and Procedures Act ("RESPA");[2] and (4) violated the Equal Credit Opportunity Act ("ECOA"). (Doc. # 16 at 14-17.) Defendant moves to dismiss all claims. (Doc. # 17.)

---

[2] Plaintiffs have agreed to withdraw this claim. (Doc. # 18 at 3.) Therefore, the Court dismisses the claim without prejudice.

## II. STANDARD OF REVIEW

Defendant brings the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of such a motion is to "test the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The "question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009). A complaint will survive a Rule 12(b)(6) motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

When claims sound in fraud, Fed. R. Civ. P. 9(b) further requires that Plaintiffs "state with particularity the circumstances constituting fraud . . . ." The Tenth Circuit has interpreted Rule 9(b) as requiring plaintiffs to "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). However, the Federal Rules of Civil Procedure

> do not require a factual basis for every allegation. Nor must every allegation, taken in isolation, contain all the necessary information. Rather, to avoid dismissal under Rules 9(b) and 8(a), plaintiffs need only show that, taken as a whole, a complaint entitles them to relief.

*U.S. ex rel. Lemmon v. Envirocare of Utah*, Inc., 614 F.3d 1163, 1173 (10th Cir. 2010).

### III.  ANALYSIS

**A.    CLAIM ONE:  FRAUDULENT MISREPRESENTATION**

Plaintiffs allege Defendant fraudulently misrepresented the status of their loan modification and foreclosure and the existence of an Office of the President and CEO available to resolve issues and make decisions with regard to loan modifications.

> To establish fraud, the plaintiff must show that the defendants made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff.

*Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 721 (10th Cir. 2014) (order and judgment) (citing *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005)).

Plaintiffs allege that there were "over 200 telephone calls" during which Defendant misrepresented the status of their loan modification and foreclosure. (Doc. #

16 at 3.) Plaintiffs further allege that "by falsely encouraging [Plaintiffs] to apply for an unavailable loan modification for over three years, [Defendant] deprived [them] of the opportunity to save their [h]ome." (*Id.* at 13.)

Defendant moves to dismiss this claim, pursuant to Rule 9(b), because Plaintiffs have not "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal*, 453 F.3d at 1263. Defendant is correct. The only phone calls for which Plaintiffs allege a specific date, speaker, and content took place after the foreclosure sale of their home on June 5, 2013, and even in these instances, Plaintiffs fail to indicate how these post-foreclosure statements resulted in damage to them.[3] *See id.*

With respect to their claim that Defendant made fraudulent misrepresentations that resulted in their "inability to save their home," in order to comply with Rule 9(b), Plaintiffs must specifically "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[4] *See id.* Furthermore, these false representations must have been made **prior** to the time at which the home went into foreclosure. *See Tatten*, 562

---

[3] Plaintiffs allege in their response, "And of course, [Plaintiffs] were also damaged by having to gather documents and fill out paperwork over and over again for a loan modification that [Defendant] never intended to offer them." (*Id.* at 13-14.) However, this allegation does not appear in the Amended Complaint. *See Mobley*, 40 F.3d at 340.

[4] Although Plaintiffs allege that Defendant's false statements "put them further and deeper into debt" (Doc. # 16 at 13-14), without further factual detail, this vague and conclusory statement is not sufficient to save this claim.

F. App'x at 721 (reliance on the misrepresentation must result in damage to the plaintiff).

Plaintiffs also allege that Defendant "holds out" the Office of the CEO and President as a way to reach persons with actual power to clear up loan modification issues, but that the office is primarily run by independent contractors without any real power. (Doc. # 16 at 3-4.)  Again, Plaintiffs fail to plead the time, place, and identity of the speakers who made a misrepresentation, and how they were damaged by relying on those alleged misrepresentations.[5]  *See Tal*, 453 F.3d at 1263.

Furthermore, the Court agrees that Plaintiffs have failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for any false misrepresentations about the status of foreclosure after July 11, 2013.  "It is long-settled law that if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation."  *Vinton v. Virzi*, 2012 CO 10, ¶ 17, 269 P.3d 1242, 1247.  The confirmation deed reflecting the Weld County Public Trustee's sale of Plaintiffs' home was recorded with the Weld County Clerk on July 11, 2013.  (Doc. # 17-7.)[6]  This official record was equally accessible to Plaintiffs as of that date.  Therefore, Plaintiffs cannot state a claim for fraudulent misrepresentation for alleged false statements regarding their home's foreclosure status and sale after July 11, 2013.

---

[5] Plaintiffs do allege some specific conversations but, in those communications, Defendant disclosed that the Office of the CEO and President was **not** the actual office of its CEO and President—in other words, those conversations, according to Plaintiff, were truthful.  Therefore, Plaintiffs have inadequately pleaded a claim for fraudulent misrepresentation.

[6] Plaintiffs do not dispute the authenticity of this exhibit.

**B.     CLAIM TWO:  CCPA CLAIM**

Plaintiffs assert that Defendant violated the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105, by engaging in deceptive trade practices. (Doc. # 16 at 15.) To bring a private cause of action under the CCPA, Plaintiffs must allege:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiffs suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiffs' injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146-47 (Colo. 2003) (citation omitted). Defendant contends that the claim fails because Plaintiffs fail to sufficiently allege a public impact or that certain misrepresentations caused their injury. (Doc. # 17 at 8.)[7]

1.     Public Impact Element

To sufficiently plead public impact, the challenged trade practice must be shown to have significantly impacted the public. *Rhino Linings,* 62 P.3d at 146-47. The three factors a court analyzes to determine whether such a pleading is sufficient are: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged

---

[7] CCPA claims also must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). *Gates Corp. v. Dorman Prods., Inc.*, No. 09-cv-02058, 2009 WL 5126556, at *5 (D. Colo. Dec. 18, 2009) (unpublished); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). While "claims under the Act are not precisely actions for fraud . . . allegations of deceptive trade practices under the Act are subject to Rule 9(b)'s requirement of particularity." *Duran*, 616 F. Supp. at 793. However, such particularity "only requires identification of the circumstances constituting fraud." *Id.* (internal quotation marks and citations omitted).

8

practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* at 149 (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)).

Plaintiffs allege that Defendant "was engaged in a widespread pattern of behavior calculated to deceive them and thousands of other consumers throughout Colorado and the United States." (Doc. # 16 at 13.) In addition, Plaintiffs included portions of affidavits from former employees stating that Defendant had a policy of delaying processing loan modification agreements and misinforming customers that their applications were incomplete. (*Id.* at 9-13.)

First, Defendant argues that "almost all of the alleged misrepresentations made to Plaintiffs appear to have been made in private conversations with [Defendant] personnel." (Doc. # 17 at 8.) However, by alleging that Defendant engaged in a widespread practice, Plaintiffs sufficiently allege that the practice had an effect on consumers generally and, therefore, does not allege "a purely private wrong." *U.S. Welding, Inc. v. Burroughs Corp.*, 615 F. Supp. 554, 555 (D. Colo. 1985).

Next, Defendant contends that Plaintiffs' allegations are insufficient because "none of the quoted affiant testimony establishes that the alleged misrepresentations were even communicated to anyone in Colorado . . . ." (Doc. # 17 at 8.) Plaintiffs respond that Defendant's "loan modification practices were also the subject of a lawsuit brought by attorney generals of all the states, including the Attorney General of Colorado." (Doc. # 18 at 7.) Again, Plaintiffs have failed to plead this fact in their

Amended Complaint and the Court will not consider it.  *See Mobley*, 40 F.3d at 340.  Moreover, Plaintiffs have not alleged any facts related to the number of consumers directly affected by the challenged practice or the relative sophistication and bargaining power of the consumers affected by the challenged practice.  *See Rhino Linings,* 62 P.3d at 146-47.  Plaintiffs must address these requirements to properly state a claim.

2.  Injury

Defendant also contends that Plaintiffs do not sufficiently allege that their injuries flow "from the conduct described by the affiants." (Doc. # 17 at 8.)  However, Defendant appears to conflate the public injury requirement with the requirement that the challenged practice caused the plaintiffs' injury.  Plaintiffs claim that Defendant's misrepresentations caused them to lose their house and offer the affiant's statements to show that the practice was widespread, not that the affiant's statements caused Plaintiffs' injury.

Nonetheless, the Court agrees that Plaintiffs have not adequately pleaded that they suffered an injury because Defendant held out the Office of the CEO and President with respect to their CCPA claim.  Relatedly, for claims premised on omissions, the Plaintiffs must sufficiently identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *Martinez v. Nash Finch Co.,* 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (citing *S.E.C. v. Nacchio,* 438 F.Supp.2d 1266, 1277 (D.

Colo. 2006)). Plaintiffs have failed to allege facts related to these requirements. Therefore, they have failed to state a CCPA claim.

**C.     CLAIM THREE:  ECOA**

In their Amended Complaint, Plaintiffs allege Defendant violated the Equal Credit Opportunity Act ("ECOA") by "failing to provide any notice of action taken on each of [their] seven loan modification applications." (Doc. # 16 at 16.)  Defendant contends this claim fails as a matter of law, arguing that because Plaintiffs were in default when they submitted their applications for loan modification, Defendant was not required to provide notice.  Plaintiffs do not dispute that they were in default when they submitted their loan modification applications and concede that Subsection 1691(d)(2) does not apply to loans in default, but argue that their claim is made pursuant to Subsection 1691(d)(1), which provides a separate cause of action.

Subsections 1691(d)(1) and (d)(2) of the ECOA provide, in pertinent part:

(1)     Within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.

(2)     Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor.  A creditor satisfies this obligation by—

    (A)  providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

    (B)  giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises

> the applicant of his right to have the statement of reasons
> confirmed in writing on written request.

15 U.S.C. § 1691(d)(1)-(2).

The Tenth Circuit has not decided whether Subsections 1691(d)(1) and (d)(2) impose separate obligations on creditors. Assuming *arguendo* that Subsection (d)(1) provides a separate cause of action,[8] Plaintiffs fail to state a claim.

Plaintiffs make vague claims that they "completed and sent to [Defendant] the first of what would be seven home loan modification applications between February of 2010 and April of 2013," and those applications "had all of the documentation required," but that that Defendant "fail[ed] to provide any notice of action taken on each of [Plaintiff's] seven loan modifications." (Doc. # 16 at 3, 16.)

The problem with Plaintiffs' ECOA claim is twofold. First, they fail to allege the dates on which they submitted completed applications,[9] making it impossible for the Court to determine whether Defendant failed to provide notice of its actions within thirty days. Second, Plaintiffs allege facts that are wholly inconsistent with their general

---

[8] *See, e.g., Offiah v. Bank of America, N.A.*, CIV.A. DKC 13-2261, 2014 WL 4295020, at *7 (D. Md. Aug. 29, 2014); *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *7 (D. Md. Jan. 22, 2013); *Ortega v. Wells Fargo Bank, N.A.,* No. 3:11cv01734, 2012 WL 275055, at *4 (N.D. Ohio Jan. 31, 2012); *Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10–3517, 2011 WL 3476994, at *16 (D. Md. Aug. 8, 2011).

[9] "[A]n application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral). The creditor shall exercise reasonable diligence in obtaining such information." 12 C.F.R. § 202.2(f)).

assertion that Defendant failed to provide any notice of action on each of their seven loan modifications. Inconsistent allegations, by definition, are not well pleaded and this Court need not accept them as true. *See McKinley Med., LLC v. Medmarc Cas. Ins. Co.,* No., 2012 WL 987821, *5 (D. Colo. Mar. 23, 2012) (a court "need not accept factual claims that are internally inconsistent."); *Bryner v. Utah,* No. 208–CV–463–CW–SA, 2010 WL 1253974 at *5 (D. Utah Mar. 24, 2010) ("The court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading.").

For example, Plaintiffs specifically state that during phone calls on July 30, 2013 and August 15, 2013,[10] Defendant informed them that the application was denied. (*Id.* at 4-5.) Moreover, Plaintiffs' Amended Complaint is replete with allegations that during myriad phone calls between the parties, Defendant informed Plaintiffs that their application was incomplete. (*Id.* at 3, 5.) Under 12 C.F.R. § 202.9(c), a creditor may orally inform an applicant of the need for additional information. Accordingly, as stated, Plaintiffs' allegations imply that Defendant complied with its notice requirements, though the Court cannot determine from the Amended Complaint whether Defendant's notifications were timely.

Plaintiffs' use of "shotgun pleadings" does little to clarify these inconsistencies. This Court has strongly criticized such use of "shotgun pleading," by which a party pleads several counts or causes of action, each of which incorporates by reference the

---

[10] Plaintiffs' Amended Complaint alleges that these conversations took place in 2014; however, because the complaint was filed August 13, 2014, the year appears to be 2013, not 2014.

entirety of its predecessors.  *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *7 (D. Colo. Jan. 18, 2013) (citing *Jacobs v. Credit Suisse First Boston,* No. 11–cv–00042, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (unpublished) (finding "shotgun pleading" to be a "defect" contributing to an award of sanctions)).  As this Court noted, "the shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader."  *Id.*  Courts roundly decry shotgun pleading as a subject of "great dismay," "intolerable," and "in a very real sense . . . [an] obstruction of justice."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295–96 n. 9, 10 (11th Cir. 2002).  The Court will not act as counsel for Plaintiffs and attempt to determine which facts support their ECOA claim.

If this claim is reasserted in any amended complaint, Plaintiffs must specifically allege the dates they submitted complete applications, the dates and content of conversations with Defendant about the status of those applications, and whether Defendant failed to provide **any** notice of its action on the application within thirty days of receipt.  *See* 15 U.S.C. § 1691(d)(1).  Because Plaintiffs have conceded that 15 U.S.C. § 1691e(f)'s five year statute of limitations bars damages for any alleged failure to respond to loan applications filed prior to July 21, 2010 (Doc. # 18 at 9), they should not reassert claims related to loan applications filed prior to July 21, 2010.  If Plaintiffs amend their complaint, they are on notice that the Court will review it holistically and if the allegations supporting other claims, *i.e.*, fraudulent misrepresentation or violations of

the CCPA, belie their ECOA claims, this claim will not survive another motion to dismiss.

## IV.  CONCLUSION

Based on the foregoing, Defendant Bank of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b) & (g) and Fed. R. Civ. P. 12(b)(6) (Doc. # 17) is GRANTED.  Specifically, it is ORDERED that Plaintiffs' Claims are DISMISSED WITHOUT PREJUDICE.  It is

FURTHER ORDERED if that Plaintiffs wish to proceed with their claims in this action, they must file **within thirty (30) days from the date of this order** an amended complaint that complies with the pleading requirements of Fed. R. Civ. P. 9(b) and 12(b)(6) as discussed in this order.

DATED:  March   12  , 2015

BY THE COURT:

*Christine M. Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge